The Work Opportunity and Welfare-to-Work tax credit provisions at issue in this case were enacted by Congress to encourage employers to hire certain disadvantaged individuals and therefore serve an important public purpose. The Court of Federal Claims' decision in this case, granting summary judgment for the government as to all of Medicare's tax credit claims under these provisions, should be set aside for two overriding reasons. First, the court erred in concluding that a certification provision that was enacted to make it easier for employers to obtain tax credits could be used categorically to bar an employer from receiving those credits, even when it could show that it was wrongfully denied the credits. And second, the court erred in granting summary judgment for the government across the board because the court recognized itself that at least some of Medicare's tax credits were wrongfully denied. The factual dispute over the extent of the improper denials precluded summary judgment for the government. Medicare, like any plaintiff, is entitled to an opportunity to prove its damages, even if in the end the damages proved to be relatively small. Well, the difficulty I have with your first point is that it seems to ignore, or at least not reference, the clear language in the statute. You've got a statute here. We have a public policy and fine. We can all agree that this is what the government and Congress intended to achieve. But then we're still left, as I'm sure you appreciate, with the statutory language. And I'm not sure how we could say that the Court of Federal Claims erred when the statutory language seems so clear to me. So you can tell me why not. But you look at one provision, and they cite everything else in the context of the entire statutory provision. And it seems to require certification. Sure. And first, let me make clear that our central position before this court is not that the submission of a certification request is enough to entitle the employer to a tax credit, but that the timely submission of a certification request makes an employer eligible for the tax credit. And I think if you look at the certification provisions, the government has pointed out that the definitions of which employees are qualified for this provision does refer to the fact that they are certified. But at the same time, the special rules for certification, which were added later in 1981, set forth a different scheme that refers to either the timely request of a certification request or the certification itself. And I think, if anything, So in your view, the application for the certification is enough to get the tax credit, even though the certification is properly denied later on? No. No, we're not taking, as I said earlier, our central position is that the timely submission of a certification request makes an employer eligible for the tax credit. But where you have a situation where those credits are wrongfully denied, or where you have the situation, as you have here and have had in the past, where credits are systematically denied. And we had a prior situation with But you didn't put in any evidence of wrongful denial, did you? Well, we think that the evidence is there. I mean, I think the most important that Here. Well, look Did you put that in opposition to the government's summary judgment motion, evidence of wrongful denial? Well, I think, Judge Ike, that it's important to appreciate the summary judgment issues that were before the court. Did you put in evidence, such evidence? The evidence that is before the court is the Court of Federal Claims and the government's own admission that at least some. OK, so the answer is you didn't put in any evidence that any of them were wrongfully denied. There are credit, there are denials in the record, Your Honor. Sorry to answer my question. Did you, in opposition to the summary judgment motion, put in evidence of wrongful denials? No, because that was not the issue teed up for summary judgment. If you look at footnote three of our opening brief in the Court of Federal Claims and footnote two of the reply brief on summary judgment, we made clear that the issue that was teed up for summary judgment was the statutory question of what the statute requires. Was it enough that timely certification requests were submitted? Or if not, then did the employer have to come forward with evidence as to wrongful denials? And we specifically made clear, if you look at the transcript of the summary judgment proceedings, that we would put in additional evidence. We wanted the opportunity to put in additional evidence that discovery would take place if the court determined on summary judgment that the government was wrong to say that the failure to obtain a certification request short circuits this case. And that under the statutory scheme, it doesn't matter how many requests were denied. It doesn't matter why they were denied, because of backlogs, because of records that were destroyed, because of the government repeatedly saying, we're working on an administrative resolution here during the period that the record retention policies were expired. So yours is a two-tier argument. Yes. Firstly, we've got some basis. Secondly, we can't meet a burden in terms of demonstrating the improper certification, but here's why. So you ought to consider our excuse as being sufficient to override that. Well, sort of, Judge Probst. And the way we see this, the first question is, is the government right that the lack of certification itself categorically bars our claim under the statute? Why doesn't the statute say that? You've got to be certified. Well, because of the special rules of certification, which refer to either the timely submission or the certification. I think if you look at the court list. Well, I guess I have a problem with your either or reading of the statute. It's not like this is all in the statute. You do one, or then you do the other. As I read the statute, it's got all of these certification requirements lined up under Section 51. And then it has a second provision, the special rules. And it's not either this or that. It's an individual should not be treated as a member of a targeted group unless. So I read it as an additional hurdle, not as one that supersedes or negates the other clear requirements of the statute. Why am I wrong? Because I'm assuming your case assumes that I'm wrong. Well, with respect, we do think we're on the approach. Why is that reading of the statute incorrect? I mean, I think if you look, you have to read the statute in terms of the purpose. It's these provisions in terms of the purpose. Well, why don't we read it in terms of the words first? And then, I mean, am I misreading? I mean, I don't think we've established there's much ambiguity here. That's your argument that it's ambiguous. Well, I think if you look at the Joint Tax Committee report, I know it's legislative history. But I think it underscores it. You can read this different ways. If you look at, it's page 173 of the 1981 report that we cite, I think, on page 19 of our blue brief. And what the committee says there is it quotes the NLS language in D12. And then it says, paren, the Congress, and I'm quoting here from the report, the Congress intended that this requirement, i.e. the certification requirement, would be satisfied if the certification is received or requested on the day in which the individual begins work. And again, it gets back to the purpose of the statutory scheme. It was to relieve burdens. So you're reading of the special rules for certification under subsection 12 would require, you're saying this is an either or. So if you meet this, all of the previous requirements that are included in the statute are irrelevant. No, it makes us, our view is that it makes an employer eligible for the tax credit. It doesn't automatically entitle the employer to the tax credit. We would need to prove that we were wrongfully denied tax credits. And then we'd get into the second question, which I think is a classic issue of disputed fact as to the extent of improper denials. The Court of Federal Claims acknowledged that at least some were improperly denied. And then the question is, to what extent were they improperly denied? They established they were improperly denied. Are you referring now to the overall survey that was done with the conclusion of 1%? Well, that was the IRS's survey. Where is the conclusion based that some of them were wrong? Well, in the Court of Federal Claims' own decision, the Joint Appendix, page 15, the Court of Federal Claims says at least some of the requests were almost certainly denied. And of course, even if the damages are minimal, this court said in the Confederated Tribes case, plaintiff has an opportunity to recover what they can prove. We've never been given the opportunity even to prove the extent to which we were denied. Even if that 1% was wrongfully denied, they weren't certified. And until they're certified, you would have no claim to a tax break, right? And that gets back to the first question, the statutory question. If the court can conclude. But I'm making the point that if there was improper certification, is that a denial of certification? Is that an administrative problem that should have gone to a district court? Should you have attacked the improper certification? Well, we couldn't have, Your Honor. Under the circumstances, that's the basic problem. You couldn't have? I thought there was a procedure for being able to challenge it. And that's the government's point, that you could go to the state agency and challenge the denial of certification. It was possible, Your Honor. And I think all of the extent to which we could have or should have at a given period of time, I think, is a seriously disputed fact in this case. But to give you a sense of what the situation on the ground was, employers had an opportunity to request reconsideration of the denial of a certification request. This was a formalized appeal process. And the fundamental problem employers had was up to the point in time of November 2003, the IRS hadn't issued the proper interpretation of the statute. The denials that the employer was receiving. But you didn't pursue that route. You just kind of gave up. Once you didn't get the certifications, you said, OK, we lose, right? Well, first of all, we didn't know why they were being improperly denied, because we didn't have the information that was necessary to make that determination. That was held by the state welfare agency. So we get a slip back that just says. Back to Judge Dyke's original point, you could have pointed out, here are at least 50 that you got wrong that are clearly fitting within the proper categories. Well, we didn't do that at any point. But Chief Judge Raylard. Either before the state agency or here at the court. Importantly, we didn't know that they did it wrong, because we didn't have the key documentation. And again, we submit the request that this individual is qualified based on a prescreening. But in order to determine. But you don't know? We don't have the welfare records. The records that you need to decide whether they were a member of a family that was receiving public assistance for a certain period were held by the state agency. Could you have asked your employee? No, because they didn't have access either. We didn't know what the state agency is doing. You didn't know if they were receiving any benefits? Well, certainly we asked during the prescreening, right? And then we submit the request in the form, the 8850 form. The state agency. But now they have been denied certification. Couldn't you go back and say, now you've told us that you were receiving benefits, were you? And he could say, sure, let me show you the checks. Well, and we did. We don't. And support your, at this point, baseless claim with facts. Well, a couple of points. First, we don't know the reason why they denied it. Because all of the denials, there's a few that are. You know the category they supposedly did not fit. And you can show they did fit the category. And we don't. And many of the way that the state reconsideration scheme worked is they said, if you have additional documentation that you can show, provide us the documentation. We don't have the documentation because the agency has it. Now, the other fundamental problem that we don't have. I'm a little unclear about how. I mean, you had the ability to file for reconsideration. Once all of the administrative stuff got ironed out, I'm not sure it ever did. But you're still in the same position. You either file for reconsideration or you don't. I mean, you're still, I'm not sure. In a lot of systems, the agency is unclear. You have no idea why they denied it. They denied it. And therefore, if you think there's a problem, if you continue to adhere to your view, you file for reconsideration. I think if you had done that, there probably, I presume on reconsideration, there's a possibility that you'd find, a likelihood that you'd find out what the problem was here and be able to fix it. But you chose not to do that here. And you're saying we ought to be off the hook for not filing for reconsideration. Why? Because we were waiting for this endless bureaucratic question to be resolved? And if I can make a couple of points in response to that. First, just to be clear, there was no statutory or even regulatory exhaustion requirement here. Now, the possibility did exist to see. But there is in a sense, it says certified. It says you gotta be certified. It provides for reconsideration. But of course, our position is that if you timely submit the request, you're at least eligible. And I guess the other problem is, and just to be clear, the employers weren't doing nothing here. What happened was, in 2003, when the IRS issued the interpretation that made clear that these were being improperly denied because of a misunderstanding of the proper requirement, the employers, through the Trade Association, went to the IRS and the Department of Labor and said, let's work out an administrative resolution here. And that was something that was initially, the feedback was positive on that. And of course, that's the way a similar systematic breakdown had been resolved in 2000. And so you have the employers going to the government and saying, with the support of the state agencies themselves, and saying, let's work on an administrative resolution. And then you have the IRS itself, and this is at page 307 of the Joint Appendix, acknowledging that there are substantial backlogs in requests for reconsideration, suggesting that this process was broken down. And you have the government, the IRS, in May 2005 and June 2006 saying, employers, we are working on an administrative resolution here. Meantime, document retention periods are expiring. And it wasn't until July 2006 that the IRS. Your time has also expired. Thank you, Your Honor. We'll give you one minute of rebuttal time. And if you'll give Mr. Farber an extra minute if he needs to use it, we'll keep time. Thank you, Your Honor. Thank you. Farber? May it please the court. First, I'd like to point out that the argument my opponent has made this morning was really raised for the first time in his reply brief. His argument in his opening brief in the Court of Federal Claims was different. He had two distinct arguments in the Court of Federal Claims. The first was a statutory argument that under taxpayers' reading of the statute, the only thing that was required to get the credit was the timely request that it was irrelevant whether the request was granted, denied, or even acted on. His second argument was an equitable argument, which was, even if the statute required actual certification, it was the government's fault that certifications were denied. And in these circumstances, the government should be precluded from relying on the absence of certification to deny the credits. Now, the Court of Claims rejected both of those arguments, and we've demonstrated in our brief that the court was correct. In his reply brief, the taxpayer disavows any type of equitable argument, which really amounted to an estoppel, which won't lie here. Instead, he has a new statutory argument.  a certification is enough to get you the credit. It now says that if you timely request it, but it's denied, you then have another bite at the apple. You can bring a refund suit like this one and collaterally attack the denial and seek to prove independently that the employees were members of the group. I would submit the court shouldn't even consider the argument because it wasn't raised properly. A reply brief is no time to raise a new argument. But even if the court wants to consider it, it flies in the face of the detailed statutory scheme that Congress has enacted. Congress has made certification an integrated part of the definition of who's a member of the targeted group. If you're not certified, you're not a member of the group. Therefore, it wouldn't do any good to go into court and prove that you meet certain substantive requirements because you still wouldn't be eligible for the credit. If you're not certified, you're not eligible. And that's just the way the statute's written. The statute allows a credit. Yeah, but we've got two district court cases which are cited by the other side. It seems those district courts, at least district court judges, were persuaded that, at least in instances where the taxpayers were coming forward with evidence that they were entitled to a certification, that they could proceed with their case. Why isn't, assuming we agreed with what the district courts did there, why wouldn't Mr. Geer prevail? For the simple reason that those cases, as Judge Basker pointed out, are distinguishable. In those cases, the taxpayer submitted a request for certification. They were never processed due to no fault of the taxpayer. And both times, the agency stopped processing because I believe the credit expired and they ran out of money. In the first case, Purdue Farms, the government didn't dispute that had these requests been processed, they all would have been certified. In the second case, the court said, I will give you the opportunity in court to prove employee by employee that had your request been processed, they would have been granted. They would have been certified. In this case, all the requests were processed and they were all denied. There's no authority that would permit a taxpayer who's gone through the process and has gotten what Congress intended, an opportunity to prove before the agency that these people should be certified and the certifications are denied, to go and do it. Yeah, but we're against a background reality of what's happening with this. There's some recognized glitches and problems with the system, including applying too stringent a standard. I'm not sure I see a distinction between where the government has not done anything. I mean, it's conceivable that the government would have denied a portion of those certifications that were raised and included in the litigation in those district courts, but the district court didn't say that. The difference, but I don't think you should read those decisions any broadly because those decisions abrogate the statute. The statute doesn't provide any way around the certification. In those cases, because the taxpayer never had an opportunity to get his employee certified, the court- Or not certified. Well, either way- We don't know what would have happened if it was not a decision. But here what they did, and they were denied, moreover, they did not seek administrative review, which is the remedy. And I would add that all this confusion that- Is it administrative review? We've been talking about, you've been using the term reconsideration. By the agency who denied the certification. Is that the same thing as you're talking about, administrative review? Yes, yes. And so- And could they challenge that in the district court if it was- I think they could sue the agencies, but if the agencies were applying the wrong standard. But they never asked the agency, the local agencies, who denied the certification to reconsider. And you have to remember that this revenue ruling, which three members of Congress asked the IRS to issue, was issued in early November of 2003. At that point, the taxpayer could have gone through all the denials, seeing how many of those were in the four groups that are affected. And the court should remember that only four groups out of the nine targeted groups were even involved in this, who's a family member. The other five are totally unaffected. At that point, they were in a position to look at all the denials and ask the agencies to reconsider in light of this revenue ruling. The records were still available that they never did. Moreover, when they came into court, they didn't introduce any denials. They introduced three denials, but none of them indicated that this confusion as to who was a family member was responsible. And Judge Basker asked them, do you have any evidence that any one of yours, regardless of whether in the overall universe some were wrongfully denied? He asked them, do you have any evidence that you can submit that any of yours were denied because the local agencies applied a standard that was inconsistent with 2003 revenue ruling? He said, no, they don't. And not only that, they said they didn't have it and they couldn't get it. And they repeat that on page 28 of their brief. They say they don't have the evidence and it's not discoverable by them. So if the court were to remand it, to give them the opportunity to prove employee by employee that these people were wrongfully denied, which I submit it would be violating the statute, they can't do it anyway. What they want is a remand. They can't do it anyway because the agency records have been, there's no intention to do it. They say it is, but that's their fault because they should have been seeking reconsideration up from the agency. Let's assume they had asked for reconsideration. Do we think that necessarily the agency would have retained the records through this time? I mean, if they had sought reconsideration, isn't it likely that the agency would have just written them a one sentence letter, your request for reconsideration is denied? I don't think we can speculate of what they would have done, particularly if they were. You're speculating that if they had asked for reconsideration, the agency would have retained the records. Is that the way it would have worked? No, Your Honor. I'm saying that if they had asked for reconsideration, we would have a better idea of knowing whether any of the denials actually were based on the application of an erroneous standard. That assumes that if they asked for reconsideration, the agency was going to respond with a detailed, documented response and analysis of why they denied the certifications. I don't know if that's the way it works. But the point is, Your Honor, if you don't, when you have an opportunity, and then you come here and you ask the court. Well, is that what you contemplate would have happened, hypothetically? I have no idea what would have happened. So we don't know whether the agencies just would give a one-sentence letter, reconsideration denied, or whether that would have served as a basis for them to come forward with all this documentation. But at least they would have had a case saying, we did everything we could. We asked for reconsideration. We cited the revenue ruling. And even then, they probably could have gone into district court and said the agency refuses to give us an explanation as to whether they applied a standard consistent with the ruling. But they did nothing. And they're coming into court and asking for this extraordinary remedy, asking this court to disregard the plain language of the statute, which makes the credit dependent on certification. The way the statute reads it is you get a credit as a percentage of qualified wages. Qualified wages, in turn, are defined as wages paid to a member of one of the targeted groups. Member of a targeted group, in turn, is expressly defined as an individual who is certified as meeting certain substantive requirements. So if you're not certified, then any wages paid to you are not qualified. And therefore, none of the wages are eligible for the credit. That is the circumstance we have here. And that's why the government was entitled to summary judgment, because the certifications were all denied. They're asking for extraordinary equitable relief where they slept on their rights. They never sought to go through their denials to see how many, if any, were actually affected by this confusion as to who's a family member, and seek review by the agencies. In the first place, at least they would make a record. So they can't say it would have been futile, because they never did it in 2003. The records would have been there. It was only the last group of employees were hired during 2001. So they never did anything. And they come into court and say, ignore the requirements of the statute that somebody has to be certified. Let us go back to trial. We can't produce any evidence, employee by employee, that any of them are wrongfully denied. But let us put on some sort of statistical evidence and have the court of claims make a wild guess about what percentage of this 3,000 would have been granted had they applied the standard set out in the revenue ruling. I would submit there's no authority for that. It's clearly not supported by the two district court cases, where they were allowed, in the first case, it was undisputed that everybody would have been certified. In the second one, they were only given the opportunity to prove employee by employee who would have been certified, had the certification been processed. Can I ask one final question? I don't know if you, I assume you know. Is the statute still in effect? Are these targeted tax credit provisions still in effect? These are probably expired. They come and go. But I'm not positive if this one's, they usually expire each year. And then they're reinstated. And there's been several series before this that expired. And then they pass this one. But I don't know if these are currently operable or not. Thank you, Mr. Farber. Anything further? Mr. Gehr, you have a minute. Thank you, Your Honor. I'd like to make just four points. First, Judge Probst, you're right about the interpretation of the district court decisions. Whatever difference they may be in underlying facts, the statutory question is the same. And as Judge Prado said in the H.E. Butt case, quote, the government's argument in this case that certification is always required, i.e., turns the statute on its head by using the certification provision, which was intended to make things easier for the employers in an attempt to block the credits. Second, with respect to this notion of administrative exhaustion, all you had was an opportunity to seek reconsideration by the state agencies. And it's important to note that after the revenue ruling in 2003, the state agencies themselves, through this association, NASWA Association, went together with the employers, went to IRS and DLL, and said, we need an administrative resolution. So they were on board with that. And then you have the IRS commissioner. Look at JA 3007 and 308 saying, we're working on an administrative consideration. There are too many backlogs to make reconsideration possible. So to say that we've slept on our rights when we're being advised that the system is broken down by the state agencies. Thank you, Mr. Gehr. I think we have your argument. Thank you, Your Honors. Our next case is ESN versus Cisco. Thank you.